Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms and adopts the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Employee is Jim Harrison, Jr.
2. Employer is Bear Grass Logging Corporation.
3. North Carolina Forestry Association Mutual Insurance Company is the carrier on this claim.
4. Defendant-employer regularly employed three or more employees and is bound by the provisions of the North Carolina Workers' Compensation Act.
5. The Industrial Commission has jurisdiction of the parties, and all parties have been properly named in this action.
6. Plaintiff was employed by defendant-employer on 28 January 1999 as an equipment operator.
7. Plaintiff earned an average weekly wage of $1,200.00 yielding the 1999 maximum workers' compensation rate of $560.00.
8. The parties stipulated the following into evidence without need for further authentication or verification:
• Stipulated Exhibit 1 Pre-Trial Agreement;
• Stipulated Exhibit 2 Form 18;
• Stipulated Exhibit 3 Form 19;
• Stipulated Exhibit 4 Form 33;
• Stipulated Exhibit 5 Form 33R;
• Stipulated Exhibit 6 Plaintiff's medical records; and
 • Stipulated Exhibit 7 Plaintiff's responses to defendants' interrogatories.
 ***********
Based upon all the competent evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 36 years old. He had graduated from high school, but he had a learning disability and took special education classes. He had a reading ability at the third or fourth grade level. Plaintiff's only employment has been in the logging business working for his father. Plaintiff primarily did just about everything that had to do with working in the woods, including cutting trees, loading logs onto trucks, operating equipment, etc. Plaintiff performed those duties as well as ensuring that the crew arrived at the work site and that the machinery was there and running and he performed the job duties of whichever crew member did not show up. If all crew members were present plaintiff operated the tree cutter. Plaintiff habitually worked five days a week, 10 to 12 hours per day. At the time of his injury, plaintiff was the foreman and ran the business.
2. On 28 January 1999, while working for Bear Grass Logging Corporation and performing his regular duties, plaintiff was working with a landing gear that had a broken cable. Plaintiff was required to manually lift the landing gear on a log trailer. As he did so, plaintiff felt immediate pain and fell to his knees. Thereafter, plaintiff reported his injury to his mother, the president of defendant-employer, and was instructed to obtain medical treatment.
3. Later that same day, plaintiff presented to Family Medical Care and was examined by Mr. Dennis A. Czuchra, a physician's assistant. Plaintiff was diagnosed with acute muscular strain of the lower back with a history of spondylosis and given medication. P.A. Czuchra offered to give plaintiff a note to stay out of work, but plaintiff declined. Mr. Czuchra gave plaintiff a note for light duty work, and instructed him to follow up with an orthopedic doctor.
4. Plaintiff did not return to light duty work with defendant-employer. It is reasonably inferred from the record that there was no light-duty work available in defendant-employer's logging business. Plaintiff only had two other crew members working at the time of his injury, and plaintiff was required to perform manual labor to keep the business going. Responsible laborers were hard to keep employed and plaintiff had to be available to train new laborers. By the end of February 1999, plaintiff placed himself and his remaining two employees on temporary lay-off status, believing he would soon return to work. When he did not, the business was never restarted.
5. When the logging business failed, plaintiff applied for unemployment benefits. He received $339.00 per week for 26 weeks, ending in October 1999. During this period and thereafter, plaintiff sought employment but was unable to obtain any work due to his physical restrictions resulting from his injury and, by inference, other vocational factors such as inexperience in other types of employment outside of heavy manual labor. Plaintiff does not have a commercial driver's license.
6. Plaintiff was prevented from keeping the appointment with the orthopedic clinic in Greenville due to a series of family medical emergencies and inclement weather conditions. Plaintiff missed the initial appointment because his wife had emergency gall bladder surgery. Between January 1999 and September 1999, plaintiff's wife had in addition to the gall bladder surgery, two hip replacement surgeries. Plaintiff had to care for his four children in her absence. Plaintiff was unable to keep the second scheduled appointment because of Hurricane Floyd and the flooding in Greenville.
7. On 5 October 1999, plaintiff presented to Dr. Talley Lassiter of Orthopedists East and reported his 28 January 1999 lifting incident and continuing pain in his mid-back radiating down to his right knee and some right leg weakness. Plaintiff was diagnosed with Grade 1 spondylolisthesis at L5-S1. Plaintiff was treated conservatively.
8. On 17 February 2000, plaintiff followed up with Dr. James C. Harvell, also of Orthopedists East. X-rays taken on that date confirmed Dr. Lassiter's diagnosis and plaintiff was continued on conservative treatment. Plaintiff continued to follow up with Dr. Harvell and a myelogram taken in May 2000 confirmed the diagnosis of isthmic spondylolisthesis of L5-S1 with some eccentric protrusion of invertibral disc at that level to the right side and neuro impingement of the S1 nerve root on the right side. At that time, conservative treatment versus an operative course was discussed with plaintiff, and he decided to pursue a non-operative course for as long as possible.
9. Dr. Harvell was of the opinion that plaintiff had a pre-existing condition of isthmic spondylolisthesis at L5-S1, and his 28 January 1999 lifting incident exacerbated that pre-existing condition and provoked symptomology.
10. Dr. Harvell further opined that patients who have plaintiff's condition have significant exacerbations of pain that can be managed conservatively with anti-inflammatory medication, steroid dosepaks, wearing support for the spine and being out of work for several weeks or months. With this treatment, their symptoms will settle and they will be able to resume a more normal level of activity. They may suddenly have another flare up or exacerbation of pain. Typically over a period of years, patients find that these flare ups become more intense, they last longer, and it is much harder to get their condition back under control, ultimately driving them to make the decision for operative treatment. Dr. Harvell was of the opinion that plaintiff's condition followed this pattern.
11. Dr. Harvell was of the opinion that plaintiff had not yet reached maximum medical improvement and retained restrictions on bending, stooping, lifting and sitting, that he could only return to a light or sedentary position, and that he would not be able to operate heavy equipment. Dr. Harvell was further of the opinion that plaintiff would continue to need to take medications including mild narcotics and that plaintiff was unable to do logging work without increased pain and frequent exacerbations and incapacitation from the date of his 28 January 1999 injury and continuing up to the time he was deposed.
12. On 18 March 1999, plaintiff underwent a Department of Transportation physical conducted by physician's assistant, Mr. Czuchra. This exam was normal and plaintiff did not complain of low back pain. As plaintiff was able to perform the range of motion exercises, Mr. Czuchra was of the opinion that the acute strain which plaintiff presented with on 28 January 1999 had resolved on 18 March 1999.
13. Dr. Harvell was of the opinion that plaintiff's ability to perform the Department of Transportation exam movements in March 1999 was a fairly common and typical scenario in patients with spondylolisthesis and it did not surprise him in the least that plaintiff could undergo that type of examination and not make complaints of back pain because his symptoms had improved. Dr. Harvell opined and the Full Commission finds that plaintiff's 28 January 1999 injury exacerbated his pre-existing condition and provoked the symptomology which continued to make plaintiff unable to perform work in the logging business, unable to perform anything other than light sedentary duty and to be restricted in bending, stooping, lifting and sitting. Greater weight is given to Dr. Harvell's opinion over those of Mr. Czuchra.
14. On 28 January 1999, plaintiff sustained an injury by accident or specific traumatic incident of the work assigned arising out of and in the course of his employment with defendant-employer.
15. Plaintiff's compensable injury by accident significantly exacerbated his pre-existing condition of isthmic spondylolisthesis of L5-S1, causing symptoms which prevented plaintiff from returning to work.
16. As a direct and proximate result of his compensable back injury, plaintiff has been unable to engage in activities required by his former job from his last date of employment, 28 January 1999 and continuing.
17. From 28 January 1999 and continuing, as a direct and proximate result of his compensable back injury, plaintiff has been unable to earn wages he was receiving at the time of his compensable injury at the same or in any other employment.
18. As a direct and proximate result of plaintiff's compensable injury, he bears a substantial risk of requiring future medical treatment.
19. Plaintiff has not yet reached maximum medical improvement.
20. Plaintiff had a history of back pain which resulted from his isthmic spondylolisthesis. However, prior to his 28 January 1999 injury, plaintiff had never suffered any disability from the same.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 28 January 1999, plaintiff sustained a compensable injury by accident or specific traumatic incident arising out of and in the course of his employment. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of plaintiff's compensable injury, plaintiff has been incapable of earning wages which he was receiving at the time of his compensable injury at the same or in any other employment from 28 January 1999 and continuing. N.C. Gen. Stat. § 97-2(9).
3. As a direct and proximate result of his compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $560.00 per week from 29 January 1999 and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
4. Defendant-employer is entitled to a credit for the unemployment compensation which plaintiff received for a period of 26 weeks in the amount of $339.00 per week. N.C. Gen. Stat. § 97-42.1.
5. To the extent the same is reasonably designed to effect a cure, give relief or lessen the period of disability, defendant-employer shall pay all medical expenses incurred or to be incurred in the future by plaintiff as a result of his compensable injury. N.C. Gen. Stat. §97-25.
6. There is a substantial risk that plaintiff will require future medical treatment as a result of his compensable injury. N.C. Gen. Stat. § 97-25.1.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For his compensable injury by accident, defendants shall pay temporary total disability compensation to plaintiff at the rate of $560.00 per week from 29 January 1999 and continuing until further Order of the Commission. Portions of this amount have accrued and shall be paid in a lump sum. This amount is subject to a credit pursuant to N.C. Gen. Stat. § 97-42.1 for unemployment benefits received by plaintiff at the rate of $339.00 per week for 26 weeks. These amounts shall be paid subject to an attorney's fee contained in Paragraph 2.
2. A reasonable attorney's fee of 25% of the compensation due under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid by deducting from that sum and paid directly to plaintiff's counsel.
3. Defendants shall pay all past and future medical expenses incurred by plaintiff which are reasonably related to his compensable injury by accident and reasonably designed to effect a cure, give relief or lessen the period of disability when bills for same have been approved by procedures adopted by the Commission.
3. Defendants shall pay the costs.
This the ___ day of September, 2001.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER